Please the court. My name is Craig Lambert from Arkansas and I represent Arkansas inmate Harl Garrett in this habeas corpus case. Harl Garrett is an 82 year old man in the Arkansas prison system and he's been attempting for the past five years now to obtain a belated direct appeal from his conviction. And I think what the issue in this case, the specific issue where it boils down to is what are we going to call a motion for a belated direct appeal? Are we going to call it a collateral application? Are we going to call it part of the direct review process? Are we going to call it an application for a state post conviction review? Or are we going to make up some name and call it some other, call it an application for whatever, miscellaneous relief or whatever. And I think the simple answer to that, and I'm just trying to address this from a standpoint of common sense as much as anything else, it is a motion for a belated direct appeal. So I think the simple answer to the question is it's part of the Arkansas direct appeal process. What has Arkansas said about that? They don't call it that, do they? I don't think that's ever been articulated in any of the case law in Arkansas. Just given it that label, I don't think there's a case that says a motion for a belated direct appeal is part of our direct appeal process. But I think that's common sense. We've got a vertical line that goes from a time of conviction, an individual gets convicted, then files a notice of appeal, files briefs, goes through the direct appeal process, goes to the Arkansas Court of Appeals, and then maybe goes to the Arkansas Supreme Court, and then from there it can go on up to the U.S. Supreme Court. That's the vertical line. Then we've got horizontal lines where we've got these other collateral remedies, like Rule 37, ineffective assistance of counsel, quorum notice, state habeas, 1691-11 petitions, and a few other things. Those go along the horizontal line. A motion for a belated direct appeal goes along the vertical line. So it's part of the Arkansas direct appeal process. I just think common sense dictates that result. Judge Rudofsky said it's not fish nor fowl, so he's saying that it doesn't fit into either, so it sort of takes a sidestep out of the direct vertical line kind of horizontally and then is sitting out there, you know, doing whatever he thinks. And he's wrong exactly why. I guess my first question, is there anything out there that's that kind of miscellaneous relief that just isn't part of a collateral review? I mean, is there such a category that exists? Well, as a post-conviction lawyer, I would say maybe like a declaratory judgment action or a mandamus action, something like that, where you're trying to get your parole eligibility. Yeah, mandamus maybe would be something that is really outside of either, right? Right. Yeah, that's true. Something along those lines. Okay. But we've got collateral remedies in Arkansas, and I don't think I really addressed your question. The court below and the attorney general have both really focused on this word collateral. And they both, the district court said this is not collateral, so no tolling. Attorney general spent a lot of time in their brief saying that this is not collateral, so no tolling. And the case, the big case that's been relied on is this Wall v. Coley case. But there's one word that's been kind of overlooked, if not ignored, and that word is invite. Invite. A petition for collateral, an application for collateral relief is one that invites a judicial reexamination of a judgment. What does a motion for direct appeal do? It invites a judicial reexamination of the judgment. So it's either part of the direct appeal process, which I think that's what it is. I think that's what common sense says it is. If it's not that, then it's got to be collateral. Well, if it's direct, though, if you look at the 11th Circuit decision by Judge Pryor, that's sort of the end of tolling. I mean, you don't get statutory tolling because you don't get statutory tolling for anything that's direct under the collateral provision. Why is the prior decision, I just forget the name of it, the 11th Circuit decision wrong on that? I think that we're talking about the Danny case, right? The 11th Circuit, 2016. Well, the Danny court said that a petition for bladed appeal is not an application for collateral relief. I think what the court, what could be implied from that decision is an implication that it's not an application for collateral relief. Therefore, it's got to be part of the direct review process. I don't think that court really got into whether, I mean, that case focused on tolling. It didn't really get into, if it's part of the direct appeal process, then we don't even get into the question of tolling. Yeah, I think that what Judge Pryor is really saying is he's just saying it's neither the way it was framed up. And the reason why it's neither is because if you prevail on the claim, you're not asking anyone to actually do a judicial re-examination of the claim. What you're asking them to do is to simply revive my right of pursuing a direct appeal, right? And so it's not doing either. And so it's not a collateral attack because it's not saying you're going to review it and come up with a collateral reason for you to succeed. All you're doing is getting your day in court and you get to go back and start over. And so that's why I think Pryor's saying it's not part of the direct appeal and it's not part of the, and I may be wrong because I'm, you know, but that's kind of how I read it was that he's just saying that it's just out there and never, never land. And why is that not true? If you follow what I'm saying. If it puts the petitioner out there and never, never land, then that's inequitable and unfair. It puts him in a catch-22, darned if you do, darned if you don't. And you're just arguing then that equity will not tolerate any unreviewable miscarriage, right? Whatever that maxim is, because I know I've butchered it. I had it in my brain five minutes ago and now I don't. And to follow up on that, the claim here is really that he was denied the right to appeal, that his lawyer abandoned him. So does that make this slightly different than a typical belated appeal? Oh, now I've decided I want to appeal. He's actually got a very specific claim, which is, I was denied effective assistance of counsel because my lawyer abandoned me and told me he's not doing it. Right. I think the best way to answer both of these questions is, this court has handed down a couple of decisions, the Strew decision and the Bishop decision. They're cited in the Attorney General's brief. And this court said, if the ultimate goal is to obtain some sort of relief from the conviction, the ultimate goal in whatever it is that you're filing, if that's the ultimate goal, then you get told. The ultimate goal in a motion for belated appeal, and that's how you get the ball rolling. I mean, there's no other way to do it, to get your right to appeal established when a case gets botched like this one was. I don't understand your argument on Strew. Strew would actually suggest that this is part of the direct appeal and therefore you don't get collateral relief tolling. So it actually, it's sort of a supercharged version of the Danny case, the 11th Circuit where, so I guess I don't know how Strew helps you. Strew, my understanding is the court held that a motion to reopen post-conviction proceedings told the statute of limitations because the ultimate goal in filing that pleading was to obtain relief. Maybe not in that specific pleading, but down the road was the goal of  I wanted to follow up on Judge Kelly's question because the district court did something a little exceptional here, which is it accounted in the timeline, it accounted for the time when his counsel abandoned him. I thought it was exceptional because it didn't pick the time of final judgment to start the tolling. It actually picked the date he learned that his lawyer had abandoned him or whatever, on October 8th, I think. And so did the district court already kind of account for that when it started the statute of limitations? Wow. I knew you would ask me a question that I couldn't answer. I don't have all the, there are some dates in here that, and I'm running over my time now, but I don't know the answer. I really don't. I'm sorry. I'm out of time. Thank you. Mr. Hawkins. Good morning, Your Honors. Mr. Garrett is not entitled to statutory tolling of his federal habeas statute of limitations based on the filing of his motion for belated direct appeal in Arkansas State Court. In Coley, the U.S. Supreme Court defined an application for collateral review as one that means judicial reexamination of a judgment or claim in a proceeding outside of the direct review process. And going to one of the questions that's been posed previously, is there some third category, direct, collateral, is there some third category? There is. In Coley, the Supreme Court made a point of defining collateral and review separately. Collateral means anything outside of direct review. But review requires examination of the judgment or claim. There are things that can be collateral outside of direct review, but don't constitute collateral review. They don't call into question the judgment or they don't call into question the claim. An example the Coley court gave was a motion for post-conviction discovery. That's clearly outside of the direct review process and would be collateral as that word is defined, but it wouldn't be collateral review. And that's sort of the easy pickings, right? I think probably most would agree that that doesn't get at the claim. But asking to appeal your conviction and sentence is, to use your colleague on the other side's analogy, sort of that's going right back down to the meat of it, right? The substance of what he's trying to get at. So, I mean, I appreciate your distinction there. I don't know that that answers it for me, that then this lands squarely in that category of a motion for a lawyer or for discovery. And one of the questions I had for you is this idea of getting at the claim. As I was reading, we were reading the Arkansas law, is it Rule 2, Appellate Rule 2, that allows for this belated? Some of the case law, now it's got some dissents in it, but some of the case law says that the court can actually look at the merits of the appeal, an ablated appeal, and deny it for that reason. Does that give the court, the Arkansas court, the opportunity to do just what you're saying, which is get at the claim? Because they say, well, we don't really care about the belatedness of this appeal. This post-conviction or this appeal just has no merit, so we're going to dismiss it. Doesn't that kind of push back on this idea that a motion for belated appeal doesn't possibly get at a claim or a judgment? So to answer your question, Your Honor, the plain language of the rule is there's an evaluation of whether there's good cause. And so I think what you're referencing, this merits adjudication, is sort of a secondary level of review that the court takes. But wouldn't we look to Arkansas law and how the Supreme Court of Arkansas is looking and interpreting that rule? And again, there's a dissent saying, no, you can't do that. You can't get to the merits. All this person's asking for is this belated appeal. So they sort of set it up for us pretty clearly. Why would the federal court ignore the way the state court is handling that Rule 2 motion? So as far as this case is concerned, even if we were to go along with your theory that while the state court can look to the merits in deciding a motion for belated appeal, here the claim asserted in the motion for belated appeal is not the pertinent claim that's being raised in the federal habeas petition. His claim was that my attorney failed to inform me that he was withdrawing, and he failed to inform me that I was on my own. That is a distinct and separate type of claim from the claim being asserted now in the amended petition, which is I've been denied my right to direct appeal, and I've been denied my right to appellate counsel. That's different? Yes, it is. I believe earlier you mentioned that you sort of classify this as possibly an ineffective assistance of counsel claim. And I do think that those are categorically different. Both of the way you've described it, though, he was abandoned by his lawyer. Whether you call it an ineffective or whether, as I understand it, Arkansas, that's one of the reasons why they, or one of the bases they are willing to consider granting a belated appeal is if your lawyer sort of left you out to dry. Whether you call that ineffective assistance or whether you're calling that, hey, let me appeal because the person who was representing me didn't do it, it's still this. I guess I see that as the same claim, and to split that hair seems, I don't know, doesn't seem quite appropriate. But I understand your position. Yes. And to push back on that just a little bit, the analysis of the claims would be different itself, whether it's ineffective assistance or whether it's denial of direct appeal. The question is going to be different ultimately. Is October 8th the right date to start the statute of limitations? I know the state doesn't argue it, but it would be right for the counsel abandoned me. I don't even think October 8th, though, is right for what he might have put in his underlying appeal had counsel brought it forward. Am I right about that? Should there be two different accrual dates potentially for the running of the statute of limitations? There certainly could be, yes. I believe there could be an earlier start date when counsel first provided Mr. Garrett the copy of the motion to withdraw and provided him the rules of appellate procedure and a pro se notice of appeal to fill out. I think at that point Mr. Garrett certainly was aware my counsel is withdrawing and is not pursuing this appeal. And so certainly that could be an earlier date than October 8th. The other thing that actually happens in Arkansas, because in most of the states that I'm aware of there's an ethical problem here, is that you can't just leave your client and not perfect the appeal first. And so in the real world that I lived in where I practiced law as a state judge and was a straight judge for years, the idea always was you file the notice of appeal, you leave the briefing to your client, you send them that they've got to let you out, and that's what happened. And you haven't abandoned your client. Whereas here, this dude just walked in and said, I quit. And he didn't write a letter that says, by the way, I'm quitting, you need to file your notice of appeal. He just sent this kind of cryptic package that has in it this thing that any lawyer would read and say, I have been abandoned, I need to do something and I need to do it now. But this is a 70-year-old late guy. I mean, does this really happen in Arkansas? So your Honor, in Arkansas the rule is generally the same. Attorneys do have to take specific steps before being allowed to withdraw. Now, that being said, I would say that... Is this the kind of case then that the Supreme Court would normally allow? I'm afraid I didn't mean to interrupt your answer to Judge Erickson, but I was hoping it was a little corollary. Is this typically something that the Supreme Court would say, oh yeah, okay, you got it. So I have seen cases where a situation similar but not identical to this has been allowed to pursue a belated appeal. And those are generally matters where the attorney has ceased essentially all communication with the client. So I do think there is a slight distinction here with counsel, again, providing Mr. Garrett the motion to withdraw, providing him with the rules, providing him with a pro se notice of appeal to file. Any person is going to construe that as my attorney is withdrawing and I'm now on my own. But I do understand... Is there evidence in the record of Mr. Garrett's level of education, sophistication, understanding? I mean, he's a 73-year-old guy at this point, right? Right. And so this kind of gets into the issue of equitable tolling, which is outside the Certificate of Appealability. Mr. Garrett didn't ask the Certificate of Appealability to include equitable tolling below. He just, at this point, has requested it. So I would say equitable tolling is outside the scope of the COA, shouldn't be addressed. In the fact that a prisoner is pro se, lacks legal knowledge, lacks legal resources, are not extraordinary circumstances to warrant equitable tolling anyways. What is before us? Because I know there is a stat, and I'm confused about this because we've heard a lot of different arguments, but my understanding was it was statutory tolling limited to whether or not, essentially, you get tolling because this is a collateral review. That's what I understand the COA to be, even though there's a lot more arguments in this case, it seems like. Correct. Yes. It is, does a motion for belated appeal in Arkansas State Court constitute an application for collateral review so that it tolls the federal habeas statute of limitations? So if we applied Danny, the answer to that question would be no. Correct. If we potentially applied the Sixth Circuit case, of course, it didn't take into account the Supreme Court case. The answer would be yes. Correct? If you take into account the Sixth Circuit case? Yes, the Sixth Circuit case. Yeah. Right. Those Sixth Circuit cases, despite the fact coming after Coley, didn't mention Coley, didn't talk about Coley. And I would also say to your point earlier about Strue, Strue actually supports our argument. Again, the language that Strue used was an application is collateral if it's designed to further the ultimate goal of gaining collateral relief. The ultimate goal here was not to gain collateral relief. The ultimate goal was to essentially claw back the right to a direct appeal and get direct relief. Well, we've focused on the language, you've focused, I think, appropriately on the language from the Supreme Court. But the court does keep talking about why they come to the definition that they do for collateral review. And one of them is, you know, let the state proceed with its process and maybe they'll get state relief and the feds never, the federal court never has to enter the picture. This sort of seems to be that type of case, which is it's not complicated. It's just a motion for belated appeal. If that's granted, the federal courts may never have to get involved. That's pretty clear cut. Why in a situation where we're kind of struggling to, at least I am, kind of categorize this motion in Arkansas law, reflecting what the federal definition is, why wouldn't we take that guidance from the Supreme Court, that sort of idea of why we have exhaustion, why we have these requirements into account to help us understand and decide this case? So to answer your question briefly, because I see I've run out of time. Take the time you need. I think the primary mechanism to exhaust such a claim as this one, the denial of a direct And that is set up specifically to provide relief for these types of claims if they're meritorious. So I know Mr. Garrett brought up the comedy argument about, well, you know, this type of motion is required to be filed before we can even get into federal court. But really at the end of the day, Rule 37, which has long been held to constitute a postconviction collateral relief mechanism that would toll, that would be the proper mechanism to raise these claims. The state courts would still have the ability to issue a decision, possibly avoid ending up in federal court, as you mentioned. But again, that would be the primary mechanism rather than a motion for a belated appeal. A belated appeal motion, while being one tool in the toolbox, the Rule 37 mechanism would be the primary and I think more forceful, particularly in attempting to protect constitutional rights. Thank you, Your Honors. Counsel, I think you used up all your time. Would you like a minute to respond to anything that your colleague has said? We'll give you a minute. Thank you. I would just say that, first of all, if it were up to me to come up with a rule, a principle, I would say if it's something that you need to do in order to exhaust your state remedies, then that time should not count against you. It should be a rule as simple as that. If Harold Garrett had not filed his motion for a belated appeal, I promise you on federal habeas, the Attorney General would be arguing procedural default. No question about that. And they would probably win on that procedural argument. Can I just ask you what your view of what's before us is? I understand it to just be the collateral review question. Is this statutory tolling for collateral review? Now, we could expand it, but nobody's asked to expand it. Is that your understanding of what question was certified to us? I think the actual language on the COA, the actual COA language from the court below, was the COA was granted on the issue of statutory tolling. I think that's what the sentence said. Got it. It's up to you to do with it what you wish. Thank you so much. Thank you to both counsel. It's a tricky case. We appreciate your argument and your briefing.